UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAY ALONZO,<br><br>    Plaintiff,<br><br>    v.<br><br>CONDELL HEALTH NETWORK, INC.<br>and CONDELL MEDICAL CENTER, INC.,<br><br>    Defendants. | No. 05 C 3731<br>Judge James B. Zagel |

### MEMORANDUM OPINION AND ORDER

Plaintiff May Alonzo filed suit against Defendants Condell Health Network, Inc. and Condell Medical Center, Inc. (collectively "Defendant" or "Condell"), alleging employment discrimination based on race or national origin and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981. Defendant now moves for summary judgment on all counts. For the following reasons, Defendant's motion is granted.

**I.    BACKGROUND**

Condell hired May Alonzo in 1997 as a staff registered nurse. Over the next few years, Alonzo received several positive performance reviews and pay increases. However, beginning in 2003, Alonzo received some negative performance reviews relating to absenteeism, excessive noise, and reactive behavior. Patricia Zeller, Alonzo's supervisor, advised Alonzo in a 2003 performance review that the shift-change report[1] was very important to patient safety and that Alonzo herself needed to "curb reactive behavior" and "foster good communication between

---

[1] When a shift ends, the nurse that is leaving provides a de-briefing—in the form of a "shift-change report"—for the nurse that is taking over.

co-workers." On July 15, 2003, Zeller told Alonzo that she needed to be more cooperative during the shift-change report.

This case arises out of three separate disciplinary actions Condell took against Alonzo. The first was a written warning issued to Alonzo on January 28, 2004, relating to a confrontation between Alonzo and another nurse, Christine Varga. On January 24, 2004, Alonzo received a shift-change report from Varga. Alonzo was asking questions about a patient that Varga thought were unnecessary and to which Varga did not know the answer. Both nurses became upset and Alonzo walked away before the report was completed. Varga reported the incident to Zeller the next day. Zeller spoke with other nurses who witnessed the incident; conferred with Jann Collier-Conrad, the Human Resources Manager; and decided to discipline Alonzo. On January 28, Zeller met with Alonzo, allowed Alonzo to tell her side of the story and then gave Alonzo a written warning that Zeller had previously prepared.

The second disciplinary action was a two-day suspension and ninety days of probation. Condell imposed this upon Alonzo within two weeks of the first action. Zeller gave Alonzo her 2004 performance review on February 2, 2004. The review had been prepared during December 2003 and January 2004. Based on this review, Zeller placed Alonzo on a 90-day performance improvement plan. On January 30, prior to the two-day suspension, Alonzo submitted two letters to Vice President of Nursing, Patricia Buckley. One letter complained that she had been the victim of a pattern of discrimination against "people with unassertive culture" and asked that the disciplinary action imposed on her be investigated. In the other letter, Alonzo gave her version of the incident that led to the first disciplinary action. Buckley referred the letters to Human Resources. Collier-Conrad investigated the incident from February 3 through February

6. Collier-Conrad determined both that Varga's version of the events was more credible than Alonzo's version and that there had been a pattern of such behavior on Alonzo's part. Thus, based on Collier-Conrad's counsel, Zeller issued a 2-day suspension, required Alonzo to see the employee assistance program for anger management issues, and required Alonzo to work the day shift so that she could be monitored closely.

The final disciplinary action was Alonzo's termination on May 28, 2004. On February 11, Alonzo applied for a transfer to another department. However, she was told that she could not transfer at that time because of the disciplinary action. On May 26, after the 90-day performance improvement plan, Zeller positively evaluated Alonzo and offered her a permanent position on the day shift as well as a raise. Alonzo then told Zeller that she was transferring to another department. Zeller investigated this claim and found that Alonzo had not been approved for a transfer. Zeller also discovered that Alonzo had told coworkers that she was transferring, even though she had not yet been approved for a transfer. On May 28, Zeller; Collier-Conrad; and Alicia Wing, the manager of the department to which Alonzo claimed she was transferring, met with Alonzo. They discussed the transfer issue. After that meeting, Condell terminated Alonzo's employment.

Alonzo filed this suit alleging that the January 28 written warning constituted discriminatory action in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981; that Condell retaliated against her by putting her on the performance improvement plan on February 2 and by suspending her on February 13; and retaliated against her by terminating her for unprofessional conduct on May 28. Alonzo also included a claim that Condell's actions

3

violated the Illinois Human Rights Act.[2] Condell now moves for summary judgment on all counts.

## II. DISCUSSION

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). In determining whether any genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of fact exists only when, based on the record as a whole, a reasonable jury could find for the non-movant. *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999). The non-movant must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Under Section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. Under Title VII, it is unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.

---

[2]Condell's motion for summary judgment on the Illinois Human Rights Act claim is granted. First, Alonzo failed to address this claim in her response to Condell's motion. In addition, the claim is encompassed by the Illinois Human Rights Act, and therefore is within the exclusive jurisdiction of the Illinois Human Rights Commission. *See Talley v. Washington Inventory Serv.*, 37 F.3d 310, 312-13 (7th Cir. 1994).

§ 2000e-2(a)(1). Since both Title VII and Section 1981 claims are analyzed in the same manner, I will use one standard for each count. *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998).

    *A.    Count I - January 28th Written Warning*

To survive summary judgment on the first count, which alleges discrimination based on race or national origin, Alonzo must prove her claim in one of two methods: the direct method or the indirect method. "Under the direct method of proof . . . the plaintiff may show (either through direct or circumstantial evidence) that the employer's decision to take the adverse job action was motivated by an impermissible purpose, such as [ ] race or national origin or age." *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998) (internal quotations and citation omitted). Alternatively, because of the difficulty in directly proving discrimination, a plaintiff may rely on the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Alonzo relies on this second approach for Count I.

Under the *McDonnel Douglas* standard, a plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *See Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1032 (7th Cir. 1998). In order to establish a prima facie case, a plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily (or meeting her employer's legitimate expectations); (3) that she suffered an adverse employment action; and (4) that other employees not in the protected class were treated more favorably. *Id.* If Alonzo is able to establish a prima facie case, then the burden shifts to Condell to articulate a valid, non-discriminatory reason for its action. *See DeLuca v. Winer Industries*, 53 F.3d 793, 797 (7th Cir. 1995). If Condell succeeds, the burden shifts back to

Alonzo, who must then show that the proffered reasons were pretextual. *See Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006).

Alonzo's claim under Count I fails because she cannot establish a prima facie case. As to the first step, it is undisputed that Alonzo belongs to a protected class. On the second step, there is a dispute as to whether she was meeting her employer's legitimate expectations at the time. Alonzo's deposition refutes some of the elements of the incident between herself and Christine Varga, the subject of the disciplinary action. While this presents a triable issue of fact, Alonzo fails with respect to at least one of the other essential elements of her prima facie case.

The January letter is not an "adverse employment action." An adverse employment action is one that "materially alters the terms and conditions of employment." *Whittaker v. Northern Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (*quoting Stutler v.Ill. Dept. of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001)). However, not every negative employment action qualifies as adverse. *See id*; *see also Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."). The Seventh Circuit holds that a reprimand does not, in and of itself, constitute an adverse employment action. *Oest v. Ill. Dept. of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001). For a reprimand to rise to the level of an adverse employment action, it must be accompanied by "tangible job consequences. *Id*. (*quoting Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998)). In *Oest*, the defendant-employer issued several reprimands to the plaintiff-employee and eventually suspended and terminated her. *Oest*, 240 F.3d at 607-10. Even though each reprimand brought the plaintiff closer to termination, "such a course was not an inevitable consequence of every reprimand." *Id*. at 613.

6

In light of Seventh Circuit precedent, the question here is whether there was some tangible job consequence accompanying the written warning of January 28, 2004.

Alonzo fails to establish a tangible job consequence attached to the written warning. She attempts to show a tangible job consequence by pointing to the comments written on the reprimand under the section entitled "action to be taken if improvements not made." Under that section, Zeller wrote "further disciplinary action and possible termination from Condell Medical Center." Although Alonzo argues that the reprimand was an adverse action because of the "possible termination" language, this reprimand itself did not materially alter Alonzo's employment. While this written warning may have brought Alonzo closer to a subsequent adverse action, it does not, by itself, constitute an adverse employment action. *Cf. Oest*, 240 F.3d at 613. Alonzo also claims that the January 28 reprimand resulted in a 90-day probation, mandatory anger management training, and required Alonzo to work the day shift. However, those three consequences flowed from the February 13 suspension, not the January 28 reprimand. Since she cannot point to a tangible job consequence, Alonzo fails to establish that the January letter was an adverse employment action.[3]

Finally, Alonzo attempts to base her discrimination claim on a "due process" right to be able to tell her side of the story before the decision to issue the reprimand was made. This claim fails for two reasons. First, Condell's procedures do not mandate that an employee be allowed to present her side of the story before the decision to take disciplinary action was made, only that

---

[3]Alonzo's failure to establish an adverse employment action, standing alone, precludes her from establishing a prima facie case. Therefore, while I believe that she also fails to produce any evidence showing that similarly situated employees not in the protected class were treated more favorably, a protracted discussion of that element is not necessary here.

the employee have the opportunity to be heard at some point in the process. The HR manual does not specify when this opportunity must be given. Alonzo simply cannot show that Condell violated its internal procedures because she herself admits that Zeller allowed her to tell her side of the story before Zeller handed Alonzo the reprimand. Second, even if Condell had violated its internal policies, that still would not remedy the deficiencies in Alonzo's prima facie case. Even if this charge could save her claim, "[d]ue process analysis requires that there be some state action sufficient to invoke the constitutional guarantee." *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1262 (7th Cir. 1985). Thus, even if Alonzo were able to show that Condell did not follow its own procedures, she cannot succeed in a due process challenge because Condell is a private entity and not a state actor.

In sum, Condell's motion for summary judgment on Count I is granted.

B.     *Count II - Suspension and 90-day Action Plan*

In Count II, Alonzo alleges that Condell retaliated against her for sending the two January 30 letters by suspending her and imposing a ninety-day probation period. Similar to discrimination claims, retaliation claims may be made via two distinct methods: direct and indirect. Here, Alonzo relies on the direct method. The direct method requires that a plaintiff show (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) a causal connection between the two. *Burks v. Wisconsin Dept. of Transportation*, 464 F.3d 744, 758 (7th Cir. 2006). A plaintiff establishing all of these elements is entitled to a jury trial unless the defendant "can produce uncontradicted evidence that [defendant] would have [taken the adverse action] anyway, in which event, the defendant's

retaliatory motive, even if unchallenged, was not a but-for cause of the plaintiff's harm." *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 643 (7th Cir. 2002).

Alonzo makes a stronger case on this count but ultimately fails because she does not contest Condell's non-retaliatory reasons for the suspension imposed on February 13. It is undisputed that the suspension issued on February 13 constitutes an adverse employment action. The dispute here centers on whether Alonzo's January 30 letters constitute protected activity. Filing a complaint with an employer may constitute protected activity under Title VII if it "indicate[s that] the discrimination occurred because of sex, race, national, origin, or some other protected class." *Tomanovich v. City of Indianapolis*, 457 F.3d at 663 (7th Cir. 2006). The *Tomanovich* court goes on to explain that "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference is insufficient." *Id.* However, an employee does not lose Title VII protection simply because the complaint filed with the employer "does not state an effective legal claim." *Mattson v. Caterpillar*, 359 F.3d 885, 892 (7th Cir. 2004). Even though an employer may discipline an employee for "utterly baseless" claims made in "bad faith," *see id.*, Title VII "forbids retaliation even if the underlying charge turns out to have been incorrect." *Flowers v. Columbia College Chicago*, 397 F.3d 532, 534 (7th Cir. 2005).

Alonzo's letters dated January 30 are somewhat problematic. In one of those letters, Alonzo asks for assistance "to protect my rights . . . under Title VII of the Civil Rights Act of 1964" and claims that the January 28 reprimand was the result of "a pattern of oppression against people with unassertive culture." Although "unassertive culture" is not listed as a protected class, Alonzo does mention Title VII and the "people of unassertive culture" reference indicates a

9

connection to race or national origin, which are protected classes. Thus, at this point, I will assume *arguendo* that Alonzo engaged in protected activity. Alonzo also establishes the third element of her prima facie case because Condell listed as a reason for issuing the suspension, Alonzo's "unfounded cultural harassment claim."

Alonzo's claim fails, however, because Condell offers a legitimate, non-retaliatory reason for its actions. Under the process outlined in *Stone*, if a defendant offers uncontested evidence of a legitimate, non-retaliatory reason for the action taken, the defendant is entitled to summary judgment, even when a plaintiff has established a prima facie case under the direct method. *Stone*, 281 F.3d at 643. Here, Condell produced evidence, including depositions and notes from interviews, that Collier-Conrad's investigation of the incident between Alonzo and Varga revealed more misconduct on Alonzo's part. According to Collier-Conrad, this misconduct, which consisted mainly of high noise levels and disrespect to colleagues, warranted suspension. Alonzo has failed to contradict this evidence. Therefore, because Alonzo presents no evidence that would contradict the non-retaliatory reasons for the suspension, she has failed to create a genuine issue of material fact and Condell is entitled to summary judgment on this count. *See Celotex*, 477 U.S. at 322-24 (holding that a non-movant cannot rest on pleading's conclusory allegations).

  C. *Count III - Termination*

Finally, Alonzo charges that her May 28 termination was retaliatory in violation of Title VII and Section 1981. Alonzo has not produced direct evidence of retaliation. Unlike Count II, there is no evidence directly linking Condell's decision to the January 30 letter (the discrimination complaint). Alonzo points to the reason stated on the termination form—"professional misconduct"—which was the same term used in the January 28 reprimand

10

and the February 13 suspension. However, this vague term, without more, does not support a causal link. Thus, the only way she can establish a prima facie case is through the indirect method. Again, that method requires that the plaintiff show (1) that she engaged in protected activity, (2) that she met her employer's legitimate expectations, (3) was subject to an adverse employment action, (4) and was treated less favorably than similarly situated employees who did not engage in the protected activity. *Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005). For the following reasons, Alonzo's claim here fails.

Although Alonzo makes much of the supposed misunderstanding about her attempted transfer to ER Express, including whether or not she was even eligible for a transfer, her claim is doomed because she cannot show that a similarly situated employee was not terminated. Alonzo has not produced any evidence whatsoever that another employee who was suspected of circumventing Human Resources and lying to fellow nurses about a transfer was not terminated. Furthermore, Alonzo engaged in the allegedly protected activity four months before the adverse action. With the passage of time, "additional proof of a causal nexus is necessary." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir., 1998) (holding that five months time, without more evidence of a causal connection between the protected activity and the adverse action, was too long to establish a prima facie case under the indirect method). Although Alonzo points to her February transfer application to show that the two events were related, the fact that Alonzo applied for a transfer does not show a causal connection between her January 30 letters and her May 28 termination. Thus, she has failed to present a prima facie case.

In addition, even were I to determine that Alonzo has established a prima facie case, summary judgment is nonetheless warranted since Condell has offered legitimate, nondiscriminatory reasons for firing her. Particularly in light of Alonzo's prior personnel

problems, Condell was justified in reacting to Alonzo's dishonesty vis-a-vis transfer. In addition, Alonzo fails to establish pretext. Even if I were to agree that Condell overreacted by firing her, it is not my province "to determine the competency of or interfere in employment decisions simply where [I] believe an employer has made a poor choice." *Ptasznik v. St. Joseph's Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006). As the Seventh Circuit has noted, it is not the proper role of courts to "sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation." *Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005).

Condell's motion for summary judgment with regard to Count III is granted.

## III. CONCLUSION

Throughout her deposition, Alonzo gives her own feeling or perception of discrimination as her primary, and in some cases her only, evidence of discrimination. Such subjective perceptions are simply insufficient to maintain a charge of discrimination. *Hall v. Gary Community School Corp.*, 298 F.3d 672, 676 (7th Cir. 2002) ("[A] plaintiff's subjective, self-serving testimony is not sufficient to contradict a well-documented history of poor job performance."). The evidence presented by both parties shows that Alonzo was a capable nurse. Although I may question the wisdom of an employer's decision to suspend or terminate an employee, the wisdom of a decision is not within the purview of Title VII or Section 1981.

Condell's motion for summary judgment on all four counts is GRANTED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: May 30, 2007